Gkaham, Judge,
delivered the opinion of the court:
Prior to the 21st of June, 1916, Francisco Villa, the Mexican revolutionist, plundered and burned the town of Columbus, N. Mex. This being an aggression upon territory of the United States and in view of possible further aggression the President of the United States, through the Secretary of War, proceeded to call into the service of the United States forthwith the units of the Organized Militia and National Guard of the State of Massachusetts, with directions to at once assemble at the State mobilization,. Framingham, Mass., or at places to be designated by the *341 commanding general of the Eastern Department, who at the time was Gen. Leonard Wood, preparatory to muster .into the service of the United States, being-one brigade and regiment of Infantry, one squadron of Cavalry, one regiment of Field Artillery, one company of Signal Corps, one field hospital, and one ambulance company, and directing that the organization necessary to complete these units should be moved to the mobilization camp where their fitness would be determined prior to being mustered into the service of the Uifited States.
The governor promptly communicated with the adjutant general of the State, who communicated with the different units, ordering them to assemble at their respective armories, and General Wood was notified. Acting under his instructions, Framingham and vicinity were selected as the mobilization camp and orders were issued to move the troops from their armories to the camp. General Wood instructed the adjutant general of Massachusetts to have his troops prepared to entrain for Mexico at the earliest moment and to see to it that the Artillery, Cavalry, field hospital, ambulance company, and Signal Corps were properly equipped with horses.
None of the Massachusetts units owned any horses prior to the call into the service, nor had any horses been assigned to them. In order to mobilize the troops at Framingham and transport them with their Field Artillery equipment to that point, under authority from General Wood the proper Massachusetts officers hired such horses as were authorized and allowed under the table of organizations for the Organized Militia at the rate of $3.50 per day for 4 days in some cases and 6 days in others, with an option of 10 days more •in case they were wanted. There was paid for the hire of these horses out of its treasury by the Commonwealth of Massachusetts the sum of $22,867.70. It does not appear that the price paid was unreasonable.
The protection of the United States was involved, there was a public emergency, the expenditure was made under the authority of the President of the United States, through the immediate order and direction of the commanding eren- *342 eral. It was made in good faith and has never been repaid. Why, it is difficult to understand from the record.
The expenditure was incident to the mobilization inaugurated and carried out for the protection of the United States against threatened aggression, and the United States in this sense received the benefit of the outlay. It is to be presumed that those who authorized and directed the expenditure were acting within their authority. It does not appear that they were not.
The plaintiff should have a recovery and is entitled to-judgment for the sum above named, and it is so ordered.
Moss, Judge; Booth, Judge; and Campbell, Ghief Justice,. concur.